IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2003

## OLD REPUBLIC SURETY COMPANY v. MORRIS ESHAGHPOUR

**Appeal from the Circuit Court for Davidson County**
**No. 98C-1087      Walter C. Kurtz, Judge**

---

**No. M2002-01890-COA-R3-CV - Filed June 4, 2003**

---

A building contractor agreed to make certain repairs to a residence and procured a performance bond as required by the Metro Government. To obtain the bond the contractor was required to execute an indemnity agreement favorably to the bonding company. The homeowner complained of the quality of the contractor's workmanship, and the Codes Department of the Metro. Government determined that certain remedial action should be taken by the contractor in order to achieve compliance with the building code. The contractor declined to do so, insisting that the problems complained of were caused by the homeowner; whereupon, the bonding company engaged another contractor to make the repairs, and filed this action against the initial contractor for indemnification. The Circuit Court ruled in favor of the bonding company. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., WILLIAM B. CAIN, J., and PATRICIA J. COTTRELL, J.

Todd E. Panther, Nashville, Tennessee, for the appellant, Morris Eshaghpour.

Melissa Kurtz Blackburn, Nashville, Tennessee, for the appellee, Old Republic Surety Company.

**OPINION**
**PER CURIAM**

**I.**

During the early-to-mid-nineties Morris Eshaghpour was president of Morris Eshaghpour Contracting Corporation ("MECC"), a Nashville business. In 1990, MECC took out a $40,000 surety bond from Old Republic Surety Company ("Old Republic") to meet the bonding requirements of the Metropolitan Government of Nashville and Davidson County. Although the bond named the Department of Codes Administration as the obligee, the bond was not only for the benefit of the Metropolitan Government, but also "for the benefit of the owners of property on which work is performed by the [contractor] pursuant to [an issued] permit . . .." In connection with the bond, Mr.

Eshaghpour executed an indemnity agreement with Old Republic Surety Company in April 1990. Under the indemnity agreement Mr. Eshaghpour had to indemnify Old Republic Surety Company for payments the company was obligated to make pursuant to the bond. This obligation mirrored and reinforced language in the bond: "Should the Company execute [the] bond(s), the undersigned agree as follows: . . . (2) to indemnity the Company and hold it harmless against all loss, liability, costs, claim damages, and expenses, internal or external of whatever kind and nature . . . which the Company may sustain or incur for or by reason of said Company writing said bond(s)."

While the bond and indemnity agreement were in effect, MECC entered into a contract in August 1994 to sell a Davidson County residence it had built to Joy Ann Moyer. Accompanying the completion of the construction of that property, the Metro Department of Codes Administration issued a letter of occupancy on November 2, 1994, stating:

> Through routine inspections and visual observations, we have determined that the work performed substantially complies with the requirements of the applicable codes and ordinances . . .. However, granting of this Final Use and Occupancy in no way relieves the contractor of its responsibility for any work performed not in accordance with applicable codes and ordinances.

Right away, in December of 1994, Ms. Moyer began experiencing and noting problems with the property and complained to Mr. Eshaghpour, who denied responsibility for the problems. Mr. Eshaghpour claimed that Ms. Moyer's problems were due to alterations and changes that Ms. Moyer had made to the topography of the land after she moved in the property and to drainage problems caused by other construction taking place at the top of the hill behind her home.

Ultimately Ms. Moyer notified Old Republic of the problems, and it notified Mr. Eshaghpour of Ms. Moyer's claim in a letter dated June 28, 1995. In addition to setting forth the claim and reminding Mr. Eshaghpour of the indemnity agreement, Old Republic wrote to Mr. Eshaghpour: "You have the primary responsibility to resolve this problem. It is requested that you advise us as to your position relative to this claim. . . . It is requested that you contact [us] immediately and advise us of your intentions. Failure to do so can result in cancellation of your bond and the revocation of your Metropolitan Government Permit." Mr. Eshaghpour responded to this letter on July 12, 1995, by denying all responsibility for the problems Ms. Moyer complained of. On July 24, 1995, Old Republic wrote back to Mr. Eshaghpour and told him that it would require Ms. Moyer to prove her claim or else it would be denied, but that Old Republic would "continue to look to your company to indemnify Old Republic Surety Company should the claimant persist in her claim."

Ms. Moyer did persist. She made a complaint to the Department of Codes Administration, which, in turn, made an inspection of the property and notified Old Republic, as surety, to make the necessary repairs. In a letter to Old Republic, the Codes Department stated:

The items listed in the attached sheet have not been completed so as to comply with the requirements of the Metropolitan Building Codes.[1] The contractor is unwilling to comply with these requirements.

Therefore, in accordance with the terms and conditions of the bond and Metropolitan Code of Laws, we hereby notify you to secure the services of a licensed and bonded contractor to make the necessary repairs to this property to bring it into compliance with Metropolitan Code of Laws.

Upon receiving this letter, Old Republic sought to have MECC make the repairs on the enclosed list. Old Republic sent a copy of the letter and code violations list to Mr. Eshaghpour with a letter stating "It is requested that you take immediate steps to resolve this situation. As we have previously advised, we will look to your company to indemnity Old Republic Surety Company from any loss, cost or expense." Mr Eshaghpour received this letter but did not respond to it. According to Mr. Eshaghpour,

The October 18, 1995 letter from Old Republic Surety Company requested that I take immediate steps to resolve the situation. However, the items identified in the October 2, 1995 letter from the Department of Codes Administration were items that were not MECC's responsibility. I had explained to Ms. Moyer that these items were not MECC's responsibility in December 1994, and I gave this explanation to Old Republic Surety Company in my July 21, 1995 letter.

Thus, Mr. Eshaghpour rested his position on his July 1995 response to Ms. Moyer's complaints without replying to the new correspondence from Old Republic that included a claim from Metro Codes Administration along with that department's itemization of the ways in which the house did not meet building codes.

---

[1]The list contained violations including:

1.   Correct the location of the positive drain to remove crawl space drainage to daylight. Gravel as necessary the foundation walls to create positive flow to crawl space drain.
2.   Slope landscape so as to provide drainage away from the house. Remove earth as needed to correct grade to construction provisions. Curb area across foundation under HVAC supply ducts and unit where storm water drains to crawl space area.
3.   Complete installing two approved columns where tributary beam is not supported at intervals provided by the provisions.
4.   Correct floor undulation in kitchen area where needed to level out floor.
5.   Repair nail pops and seam cracks in sheetrock where needed.
6.   Repair electrical light and outlet to operate as per National Electrical Code.

After Old Republic received no response from Mr. Eshaghpour to its October letter, it again wrote to him on December 21, 1995, stating:

> We have been advised by the Metropolitan Government of Nashville and Davidson County of Tennessee that the code violations . . . have still not been corrected. We have been advised by the building inspector to secure the services of a license[d] and bonded contractor to make the necessary repairs to this property to bring it into compliance with the Metropolitan code of laws . . ..
>
> Since we have written to you several times regarding this matter, we are going to proceed in fulfilling our obligation under your bond. I want to assure you, however, that we fully intend to take legal action against you to recover any and all loss, cost and expense this company incurs pursuant to the bond application and indemnity agreement that you executed on January 26, 1990 . . ..
>
> Unless we hear from you within five days of receipt of this letter, we shall proceed accordingly.

When Old Republic received no response from MECC, Old Republic authorized Ms. Moyer to hire an independent third party to both inspect the premises and provide an opinion and a bid. Subsequently, Donald Estes of Ray Bell Construction provided a report that partially concurred with the letter from Metro Codes and provided an estimate to repair the listed items. Old Republic then reached a settlement with Ms. Moyer, hired the contractors to make the necessary repairs, paid those contractors and Ms. Moyer, and thereafter sought indemnification from Mr. Eshaghpour.

Because Mr. Eshaghpour resisted paying Old Republic, the company in April 1998 filed suit in the Circuit Court for Davidson County against Mr. Eshaghpour to enforce the parties' indemnity agreement. Mr. Eshaghpour denied that he owed Old Republic under the agreement, and he raised two affirmative defenses: (1) that Old Republic failed to conduct a proper investigation that would have revealed that MECC was not responsible for the items the homeowner complained about, and (2) that as a surety, Old Republic had a duty to present all available defenses on MECC's behalf, which it did not do. Mr. Eshaghpour also averred that the repair costs sought by Old Republic were "unreasonable and do not cover work for which he or [MECC] is responsible."

In May 1999, Old Republic moved for summary judgment, and the circuit court granted the motion. The court found that the surety had the power under the indemnity agreement to settle claims, and that before settling, Old Republic gave Mr. Eshaghpour adequate opportunity to address or otherwise respond to the homeowner's claims as identified by the codes department. The court found that the undisputed facts failed to establish bad faith on the surety's part in settling with the homeowner. The court then entered judgment against Mr. Eshaghpour for $17,220.88, the amount claimed by Old Republic for the repairs, plus attorneys fees and costs.

-4-

Believing the court had erred, Mr. Eshaghpour appealed. In November 2001, we handed down an opinion, *Old Republic Sur. Co. v. Eshaghpour*, No. M1999-01918-COA-R3-CV, 2001 WL 1523364 (Tenn. Ct. App. Nov. 30, 2001) (No Tenn. R. App. P. 11 application filed), affirming on the issue of liability but vacating and remanding on the issue of damages and attorneys fees. In our ruling, we said, "[W]e vacate the award of damages and remand to the trial court for proof, which may be by affidavit or sworn verification, of the amounts paid by Old Republic due to the claim herein and, therefore, owing under the indemnity agreement."

On remand, Mr. Eshaghpour took discovery from Mike Jankowski, a senior vice president of Old Republic's who supervised the claims department, and who gave evidence of the amount the company paid to settle Ms. Moyer's claim. Thereafter, Old Republic submitted its claim for damages to the court in the amount of $16,810.88 plus attorneys fees of $4,802.50. There was no hearing. To support its claim, Old Republic supplied the court with two affidavits and a deposition from Mr. Jankowski, plus copies of checks issued by the company in payment of Ms. Moyer's claims, plus an affidavit on attorneys fees. Against all of this, Mr. Eshaghpour merely argued that the materials submitted by Old Republic were insufficient to support a judgment against him since the company had not shown the reason why the checks were written for the stated amounts.

The circuit court recognized that the court of appeals had affirmed on the issue of liability and that the appellate court had "remanded the case for a determination of damages." The circuit court took into account Mr. Eshaghpour's position that Old Republic had failed to prove any damages, nevertheless, upon considering all the materials and both sides' arguments, the circuit court in July 2002 granted judgment for Old Republic for $16,810.88 plus $3,537.50 in total attorneys fees. The circuit court found that the check copies submitted by Old Republic were written to pay Ms. Moyer's claim and that the amount of the checks were supported by invoices for the necessary repairs. The court ultimately rested its ruling on a conclusion that "Mr. Jankowski's statements along with his personal knowledge as to payments surrounding the claim are sufficient to eliminate any question of fact regarding damages." For the second time, Mr. Eshaghpour has appealed.

Mr. Eshaghpour continues his initial argument that Old Republic failed to prove that it incurred costs and expenses that were covered by the Bond. To determine whether Old Republic proved its damages - or failed to do so - recourse must be had to the testimony of its Claims Manager, Michael Jankowski, who testified by deposition and affidavit. He was not employed by Old Republic at the time the Bond was executed, or when the work was performed, and thus had no personal knowledge of the nature of the work performed by the contractors employed by Old Republic to make the repairs to Ms. Moyer's property.

Mr. Eshaghpour concedes that various documents identified by Mr. Jankowski are business records of Old Republic and are admissible as such. Included in these documents are copies of checks issued by Old Republic which support the amount of damages as found by the trial court. This would, prima facie, appear to end the matter, but Mr. Eshaghpour argues that "the establishment of these documents as admissible business records does not establish whether Old Republic Surety

Company incurred damages that are covered under the Bond," because Michael Jankowski was not competent to testify as to whether Old Republic incurred damages.

The Circuit Court found that the plaintiff offered sufficient proof of the damages it incurred, pointing out that Mr. Jankowski, in his supplemental affidavit, testified that the checks were issued to satisfy the claim of Ms. Moyer pursuant to invoices submitted by the contractor who was engaged to perform the required corrective work conformable to the building codes. The obligation of the Bond was ". . . . to secure . . . the costs of repairs incurred by [Ms. Moyers] resulting from the failure of [Mr. Eshaghpour] to comply with and conform to the above mentioned laws and ordinances of the Metro Gov't." The record adequately reveals that the repairs were required to bring Ms. Moyer's property into Codes compliance, and, concomitantly, that Old Republic honored its obligation to pay the costs thereof. The indemnity agreement, in plain language, required Mr. Eshaghpour to reimburse Old Republic these costs. We have reviewed the evidence in the light most favorable to Mr. Eshaghpour, and conclude that the judgment of the Circuit Court is correct. *Staples v. CBL & Assoc.*, 15 S.W. 3d 83 (Tenn. 2000). The judgment is accordingly affirmed with costs assessed to the appellant.

PER CURIAM